UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                          :

LIBERTY MUTUAL FIRE INSURANCE CO.:
and LIBERTY MUTUAL INSURANCE CO., :
                                          :

                        Plaintiffs,   :             13-CV-4784 (VSB)
                                          :

                   -v.-            :        **MEMORANDUM & ORDER**
                                          :

J.&S. SUPPLY CORP.,              :
                                          :

                       Defendant.   :
                                          :
--------------------------------------------------------X

Appearances:

Mark Joseph Weber
Lloyd Andrew Gura
Mound Cotton Wollan & Greengrass
New York, NY
*Counsel for Plaintiffs*

Lisa M. Solomon
Law Offices of Lisa M. Solomon
New York, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

       Before me is the motion for partial summary judgment filed by Plaintiff Liberty Mutual

Fire Insurance Company ("LMFIC"), (Doc. 18), and the related motion to sustain discovery

objections and/or for a protective order filed by LMFIC and Plaintiff Liberty Mutual Insurance

Company ("LMIC") (collectively, "Liberty Mutual"), (Doc. 47).[1]  The Special Multi-Peril Policy

(the "SMP Policy," Doc. 21-2) issued by LMFIC to Defendant J&S Supply Corporation ("J&S")

---

[1] On June 1, 2015 I granted in a short order Liberty Mutual's motion to sustain the discovery objections and for a protective order.  (Doc. 61.)  This Memorandum and Order also sets forth the reasoning in support of that short order.

is unambiguous; therefore, where a claimant suffers a progressive injury over time, such as an asbestos-related illness, the SMP Policy provides for pro rata allocation of liability based upon the insurer's time on the risk.  Accordingly, LMFIC is entitled to partial summary judgment, and because the discovery requests of J&S at issue seek extrinsic evidence that would only be discoverable if the SMP Policy was ambiguous, Liberty Mutual properly objected to those discovery requests.

## I.  __Background__[2]

J&S is a building materials dealer that sells insulation and roofing products and has its principal place of business in Long Island City, New York.  (Compl. ¶ 6; Diamond Aff. ¶ 4.)[3] LMFIC is a Wisconsin corporation, and LMIC is a Massachusetts corporation; both have their principal place of business in Boston.  (Compl. ¶¶ 4-5.)  LMFIC issued the SMP Policy to J&S, which was in effect from March 1, 1987 to March 1, 1988.  (D's 56.1 Resp. ¶ 1.)[4]

The SMP Policy provides that LMFIC will "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence . . . ."  (SMP Policy 21.)[5]  It further provides that LMFIC "shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damages . . . and may make such investigation and settlement of any claim or suit as it deems expedient."  (*Id.*)  The SMP Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by any

---

[2] The following facts are undisputed unless otherwise noted.  This summary is intended for background purposes only and contains no findings of fact.

[3] "Compl." refers to the Complaint.  (Doc. 1.)  "Diamond Aff." Refers to the Affidavit of Michael Diamond in Opposition to Liberty Mutual's Motion for Partial Summary Judgment.  (Doc. 23.)

[4] "D's 56.1 Resp." refers to Defendant's Counterstatement of Undisputed Material Facts.  (Doc. 26.)

[5] All citations to page numbers in the SMP Policy are to the page numbers assigned by ECF to Doc. 21-2.

person which occurs during the policy period, including death at any time resulting therefrom."
(*Id.* at 30.)  It defines "occurrence" as "an accident, including continuous or repeated exposure to
conditions, which results in bodily injury or property damage neither expected nor intended from
the standpoint of the insured."  (*Id.*)

On October 21, 2011, Frank and Alice Kestenbaum filed an action (the "Kestenbaum
Action") against J&S, among other defendants, in the Supreme Court for the State of New York.
(D's 56.1 Resp. ¶ 6.)  The Kestenbaums sought, among other things, damages for bodily injury
resulting from Frank Kestenbaum's exposure to asbestos.  (*Id.* ¶ 7.)  J&S provided notice of the
Kestenbaum Action to Liberty Mutual on or about January 30, 2012.  (*Id.* ¶ 8.)  By letter dated
March 2, 2012, subject to a reservation of rights, LMFIC agreed to provide J&S with a defense
in the Kestenbaum Action under the SMP Policy.  (*Id.* ¶ 9.)  On October 15, 2012, Liberty
Mutual sent a second letter to J&S, further agreeing to defend J&S in the Kestenbaum Action
pursuant to a Business Owners Liability Policy (the "BOP Policy") that had been in place from
December 29, 1985 to December 29, 1988.  (*See id.* ¶ 10; Bryce Aff. Ex. 4, at 2.)[6]  In the
October 15 letter, Liberty Mutual reserved its rights under the BOP Policy and again under the
SMP Policy, and it advised Plaintiff that "Liberty Mutual Insurance will only be obligated to
indemnify J&S . . . during the triggered period where it has confirmed coverage, and J&S . . .
will be liable for its pro rata share for triggered periods in which it was uninsured prior to 1985."
(Bryce Aff. Ex. 4, at 2.)  J&S disputes the validity of Liberty Mutual's reservation of rights in the
October 15 letter on the basis that LMIC issued the letter, while LMFIC was the issuer of the

---

[6] "Bryce Aff." refers to the Affidavit of Roderick Bryce in Support of Liberty Mutual's Motion for Partial Summary
Judgment.  (Doc. 21.)  Although Liberty Mutual's second reservation of rights stated that the BOP Policy was in
effect until December 29, 1988, Liberty Mutual subsequently advised J&S that the BOP Policy had been canceled
on March 1, 1987, the effective date of the SMP Policy, as documented in a printout from Liberty Mutual's policy
archives.  (*See* Bryce Aff. ¶ 6 n.1; *id.* Ex. 5.)

BOP Policy and SMP Policy.  (*See* D's 56.1 Resp. ¶ 10.)

Frank Kestenbaum was diagnosed with mesothelioma in October 2010.  (*Id.* ¶ 13.)  In the Kestenbaum Action, he asserted that he had sustained a number of asbestos-related injuries, including mental and emotional pain and suffering, shortness of breath, severe coughing, and severe weight loss.  (*See id.* ¶ 11.)  He stated in response to interrogatories that his exposure to asbestos began in the 1960s and that he had been exposed to asbestos in his dealings with J&S from 1974 through 2010.  (*Id.* ¶ 12.)  In 2013, Liberty Mutual settled the Kestenbaum Action on behalf of J&S.  (*Id.* ¶ 14.)  Liberty Mutual has made numerous requests for contribution from J&S, but J&S has declined to pay Liberty Mutual "for amounts Liberty Mutual voluntarily paid." (*Id.* ¶ 15.)

## II.    **Procedural History**

Liberty Mutual initiated this action by filing its complaint on July 10, 2013.  (*See* Compl.)  The complaint alleges that J&S is required under New York law to reimburse Liberty Mutual for a pro rata share of the settlement payment to the Kestenbaums for the years in which J&S was uninsured.  (*See id.* ¶¶ 24.)  Liberty Mutual asserts three causes of action for equitable contribution and declaratory relief.  Specifically, it seeks:  (1) a judgment against J&S for the indemnity payments made to settle the Kestenbaum Action in excess of Liberty Mutual's pro rata share, (*see id.* ¶¶ 28-33); (2) a declaration that Liberty Mutual is only obligated to pay its pro rata share of indemnity costs in future actions arising under all insurance policies issued to J&S, (*see id.* ¶¶ 34-38); and (3) a declaration that J&S is not covered in future asbestos-related actions under certain Umbrella Excess Liability Policies (the "UEL Policies") issued by Liberty Mutual to J&S that allegedly contain asbestos exclusions, (*see id.* ¶¶ 12-13, 39-45).

J&S answered the complaint on September 11, 2013.  (Doc. 6.)  The case was initially

assigned to the Honorable Lewis A. Kaplan and was reassigned to me on February 3, 2014.  At

an initial pretrial conference in March 2014, LMFIC expressed its desire to file an early motion

for partial summary judgment on its claim for equitable contribution for J&S's pro rata share of

indemnity in the Kestenbaum Action.  LMFIC submitted a pre-motion letter regarding its

anticipated motion, (Doc. 14); J&S responded, (Doc. 15); and the anticipated motion was

discussed at a conference on April 10, 2014.  Fact discovery commenced, and the parties

indicated at the April 10 conference that they would continue with discovery while the motion

was pending.  (*See* Doc. 16 at 43:3-9.)  Liberty Mutual advised the Court that neither party could

locate the actual BOP Policy issued to J&S, but that Liberty Mutual had provided coverage to

J&S under the BOP Policy in the Kestenbaum Action on the basis of a standard form BOP

Policy, which J&S had accepted without reservation.  (*See* Doc. 14 at 2 n.2.)

LMFIC filed its motion for partial summary judgment on May 12, 2014, seeking "a

declaration that:  (i) Liberty Mutual is obligated to pay only its pro rata share of indemnity under

the [SMP Policy] issued to [J&S], including in connection with the settlement of [the

Kestenbaum Action]; (ii) Liberty Mutual is not obligated to indemnify J&S for uninsured years

or the periods insured by other insurance carriers; and (iii) Liberty Mutual is entitled to equitable

contribution from J&S for the amount Liberty Mutual paid under the SMP Policy in excess of its

pro rata share of indemnity with respect to the Kestenbaum [Action]."[7]  (Doc. 18.)  On that date,

LMFIC filed a Local Rule 56.1 statement, (Doc. 19); memorandum of law, (Doc. 20); and a

supporting affidavit and exhibits, (Doc. 21).  On June 11, 2014, J&S filed a memorandum of law

in opposition, (Doc. 25); a Local Rule 56.1 counterstatement, (Doc. 26); and supporting

---

[7] Although Liberty Mutual had discussed at the April 10 conference the possibility of moving for summary judgment on the basis of multiple policies, (*see* Doc. 16 at 6:19-7:7), its motion for summary judgment relates only to the SMP Policy.

affidavits and exhibits, (Docs. 22, 23).  LMFIC filed a reply memorandum on June 25, 2014.

(Doc. 28.)

The core argument of LMFIC's motion is that the SMP Policy is unambiguous on its face

and, as a matter of settled New York law, requires LMFIC to pay only a pro rata share of

indemnity for the limited portion of the period covered by the Kestenbaum Action during which

the SMP Policy applied.  J&S argues, *inter alia*, that the policy is ambiguous and that disputes

about its meaning must be resolved with reference to extrinsic evidence.

In advance of a scheduled status conference on February 19, 2015, the parties notified me

of certain discovery disputes that had arisen and submitted a series of letters addressing those

disputes.  (Docs. 34-41.)  Some of these disputes are not relevant here and were resolved at the

February 19 conference.  The dispute presently at issue pertains to J&S's Document Requests 16,

17, and 19.  Those requests were originally formulated as follows:

J&S Document Request No. 16:

All pleadings, motion papers, and settlement Documents concerning all lawsuits in
which Liberty Mutual or any affiliate was a party, a lost policy was at issue and the
claims were asbestos-related or based upon pollution injury or other progressive
injury where alleged exposure to asbestos-related or other hazardous substances
occurred at any time from 1965 to 1988.

J&S Document Request No. 17:

All claims and policy file Documents and settlement Documents concerning all
claims, including names and addresses of such claimants, that were denied or
limited on the basis of a so-called 'pro rata allocation' due to in part or whole for
uninsured years involving a lost policy where the claim related to asbestos injury,
pollution injury or other progressive injury and the alleged exposure to asbestos or
other hazardous substances occurred at any time from 1965 through 1988.

J&S Document Request No. 19:

All Documents concerning the manner in which Liberty Mutual has applied the
policy language "which occurs during the policy period" to asbestos-related claims
or claims based upon pollution injury or other progressive injury claims of other

6

insureds with respect to policies covering all or any part of the period 1977 through
1988.

(Doc. 41 at 5-6.)  Liberty Mutual objected to all three demands on the basis of, *inter alia*,

overbreadth, irrelevance, and undue burden.  (*See id.*)  J&S expressed its willingness to accept a

random sampling of responsive documents, but Liberty Mutual asserted that a sampling of

documents would remain irrelevant and unduly burdensome to produce.  (*See id.* at 4.)

At the February 19 conference, Liberty Mutual indicated that it was in the midst of

preparing affidavits to demonstrate that producing documents responsive to Requests 16, 17, and

19 would be unduly burdensome.  (Doc. 53 at 11:6-9.)  J&S argued that its requests would lead

to the discovery of relevant evidence concerning Liberty Mutual's prior course of dealing that

would bear on the meaning of purportedly ambiguous contractual terms in the SMP Policy.  (*See*

*id.* at 14:17-15:23.)  Liberty Mutual argued, consistent with its position in LMFIC's partial

motion for summary judgment, that the requested documents are irrelevant because the contracts

are unambiguous.  (*See id.* at 10:18-19:14.)  I instructed the parties to meet and confer to

determine whether J&S could propose a sampling method that would alleviate Liberty Mutual's

concerns about undue burden and avoid motion practice.  (*See id.* at 25:24-26:9.)

The parties advised me on March 5, 2015 that they could not reach agreement, and I

approved a proposed briefing schedule.  (Doc. 43.)  On March 27, Liberty Mutual filed its Rule

26 motion, (Doc. 47); supporting memorandum of law, (Doc. 50); and two burden affidavits,

(Docs. 48-49).[8]  J&S filed an opposition memorandum, (Doc. 51), and declaration of counsel,

(Doc. 52), on April 20.  On May 4, Liberty Mutual filed a reply memorandum, (Doc. 55), and a

declaration of counsel with supporting exhibits, (Doc. 56).[9]  In the course of the parties'

---

[8] The motion and burden affidavits appear to have been inadvertently filed in duplicate.  (*See* Docs. 44-46.)

[9] J&S subsequently filed a letter complaining that Liberty Mutual's eleven-page reply brief and thirteen-page reply
declaration exceeded the ten-page limit specified in my Individual Rules 4.B and 4.D, but not requesting any

discussions prior to the filing of Liberty Mutual's Rule 26 motion, J&S superseded Document

Requests 16, 17, and 19 with the following amended demand (the "Modified Requests"):

> <u>J&S' Requests in Lieu of Document Request Nos. 16, 17 and 19</u>:
>
> 1. Identify by index number, name, jurisdiction and counsel for the parties all lawsuits commenced beginning 1985 through the present in which Liberty Mutual or any affiliate was a party involving an asbestos-based claim where allocation, i.e. all sums or pro rata allocation, was at issue[,] whether such lawsuits were settled, dismissed, discontinued or adjudicated.
>
> 2. Copies of the coverage files or those parts of the general claims files related to coverage issues for the earliest three claims for each year beginning 1985 through 1991 and for years 2009-2014 that involved an asbestos-related claim where allocation, i.e., all sums or pro rata allocation, was at issue and the claim involved a New York policy holder.

(Ps' Rule 26 Mem. 4; *see* D's Rule 26 Opp. 13-14.)[10]  Liberty Mutual objected to the Modified

Requests because they are overbroad, unduly burdensome, and seek irrelevant material in light of

the unambiguous meaning of the policies at issue in this litigation.  On June 1, 2015, in a

previous order, (Doc. 61), I granted Liberty Mutual's Rule 26 motion and stated that I would

explain my reasoning in a subsequent order.  I do so below.

LMFIC's pending motion for partial summary judgment and Liberty Mutual's previously

granted Rule 26 motion are interrelated and address substantially the same issue:  whether the

SMP Policy (and, by implication, other policies issued to J&S containing the same language) is

ambiguous or, under New York law, unambiguously provides for pro rata allocation of

indemnity based upon the insurer's time on the risk for a progressive injury whose precise date

---

particular relief.  (*See* Doc. 57.)  Liberty Mutual responded, characterizing J&S's letter as an improper surreply because it contained two paragraphs of substantive argument.  (Doc. 58.)  I will exercise my discretion to overlook any minor noncompliance with the page limits in this instance; however, all counsel are directed to comply in the future.

[10] "Ps' Rule 26 Mem." refers to the Memorandum of Law in Support of Liberty Mutual's Motion to Sustain Its Discovery Objections and/or for a Protective Order.  (Doc. 50.)  "D's Rule 26 Opp." refers to the Memorandum of Law of Defendant J&S Supply Corp. in Opposition to Plaintiffs' Motion for a Protective Order.  (Doc. 51.)

of origin is unknown.  I therefore address both motions in this Memorandum and Order.

### III.   Legal Standard

#### A.   *Summary Judgment*

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see* Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted."  *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1).  In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the

court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2), (3).

Finally, in considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party."  *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal citations and quotation marks omitted); *see also Matsushita*, 475 U.S. at 587.  "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non moving party," summary judgment must be denied.  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

In disputes involving the construction of an insurance contract under New York law, summary judgment is appropriate where the policy is "wholly unambiguous," and whether or not a policy is ambiguous is a question of law to be decided by the court based upon the terms of the policy alone.  *Sarinsky's Garage Inc. v. Erie Ins. Co.*, 691 F. Supp. 2d 483, 485-86 (S.D.N.Y. 2010); *see also Burke v. Ulico Cas. Co.*, 165 F. App'x 125, 127 (2d Cir. 2006) (summary order).

## B.    *Discovery*

Rule 26 provides that a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," and that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  On a motion by a responding party, I "must limit the frequency or extent of discovery otherwise allowed" if I determine that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case,

the amount in controversy, the parties' resources, the importance of the issues at stake in the

action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P.

26(b)(2)(C)(iii).  This Rule embodies a "concept of proportionality," and "provide[s] courts

significant flexibility and discretion to assess the circumstances of the case and limit discovery

accordingly to ensure that the scope and duration of discovery is reasonably proportional to the

value of the requested information, the needs of the case, and the parties' resources."  *Chen-*

*Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 303 (S.D.N.Y. 2012) (internal quotation marks

omitted).  Therefore, discovery rulings are reviewed for abuse of discretion.  *See, e.g.*, *Goetz v.*

*Crosson*, 41 F.3d 800, 805 (2d Cir.1994).

    **IV.**    <u>**Discussion**</u>

    **A.**    ***The SMP Policy Unambiguously Provides for Pro Rata Allocation***

When an injury occurs gradually over a long period of time and implicates multiple

successive insurance policies, courts have apportioned liability by using either joint and several

allocation or pro rata allocation.  *See Roman Catholic Diocese of Brooklyn v. Nat'l Union Fire*

*Ins. Co.* ("*Roman Catholic Diocese*"), 991 N.E.2d 666, 676 (N.Y. 2013); *Consol. Edison Co. v.*

*Allstate Ins. Co.* ("*Con Edison*"), 774 N.E.2d 687, 693 (N.Y. 2002).  Joint and several allocation

means that all insurers are jointly and severally liable for the entire loss, and pro rata allocation

means that each insurer is liable only for a portion of the loss based upon the length of its policy

period.  *See Con Edison*, 774 N.E.2d at 693.

The Second Circuit first considered the issue in *Stonewall Insurance Co. v. Asbestos*

*Claims Management Corp.*, 73 F.3d 1178 (2d Cir. 1995).  The Second Circuit noted that New

York law was not yet settled on how liability should be apportioned and concluded that, when a

continuous injury triggers coverage under successive policies that indemnify the insured for "all

sums" arising from an injury "during the policy period," liability should be allocated pro rata among the insurers based upon their time on the risk. *Id.* at 1203. In *Olin Corp. v. Insurance Co. of North America* ("*Olin I*"), 221 F.3d 307 (2d Cir. 2000), the Second Circuit concluded that the policies at issue in that case were ambiguous, but that their language was consistent with pro rata allocation based upon the insurer's time on the risk, and that considerations of equity and public policy favored pro rata allocation under New York law. *See id.* at 323-24.

In *Con Edison*, the New York Court of Appeals construed policies requiring the insurer to pay "all sums" for which the insured was liable arising out of an "occurrence," meaning "an event, or continuous or repeated exposure to conditions, which causes injury, damage or destruction during the policy period." *Con Edison*, 774 N.E.2d at 693. The Court of Appeals concluded that joint and several allocation of the entire risk to each insurer was inconsistent with the "unambiguous language" of the policies. *Id.* at 694. Rather, "[p]roration of liability among the insurers acknowledges the fact that there is uncertainty as to what actually transpired during any particular policy period." *Id.* at 695. The Second Circuit later described *Con Edison* as "holding that in the absence of contractual language to the contrary, courts should use the pro rata approach to allocating liability for damages in cases of progressive environmental injury under these circumstances." *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 96 (2d Cir. 2012).

J&S argues on three different grounds that *Con Edison* does not dictate pro rata allocation of indemnity under the SMP Policy it purchased from LMFIC. None of these arguments is persuasive, and two are contrary to the case law.

First, J&S argues that the SMP Policy is ambiguous because, unlike the policy at issue in *Con Edison*, it does not expressly state that the policy applies only to occurrences that take place

within the policy period.  (*See* D's SJ Opp. 12-13.)[11]  The SMP Policy requires LMFIC to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence."  (SMP Policy 21.)  It defines "bodily injury" as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom," and "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."  (*Id.*)  In this respect, J&S is correct that the SMP Policy differs somewhat from the policies at issue in *Con Edison*.  In *Con Edison*, the policies "provid[ed] indemnification for 'all sums' of liability that resulted from an accident or occurrence '*during the policy period.*'"  *Con Edison*, 774 N.E.2d at 695.  Here, the SMP Policy covers injury occurring during the policy period but does not explicitly state that the occurrence causing the injury must have taken place during the policy period.

This is ultimately a distinction without a difference because J&S's argument is foreclosed by the decision of the New York Court of Appeals in *Roman Catholic Diocese*.  There, the Court of Appeals held that pro rata allocation was "consistent with the language" of a policy that, like the SMP Policy, "provides coverage for bodily injury only if the bodily injury 'occurs during the policy period' and is caused by an 'occurrence.'"  *Roman Catholic Diocese*, 991 N.E.2d at 676. The Court of Appeals concluded that this policy language "[p]lainly" limited coverage only to injury occurring within the finite period of the policy.  *Id.*  Thus, regardless of whether the policy provides that the *occurrence* must occur during the policy period or that the *bodily injury* must

---

[11] "D's SJ Opp." refers to the Memorandum of Law of Defendant J&S Supply Corp. in Opposition to Plaintiffs' Motion for Summary Judgment.  (Doc. 25.)

occur during the policy period, the same logic dictates the same result:  "[P]roration of liability among the insurers acknowledges the fact that there is uncertainty as to what actually transpired during any particular policy period."  *Id.* at 677 (quoting *Con Edison*, 774 N.E.2d at 695). Accordingly, J&S cannot distinguish the SMP Policy from the policies at issue in *Con Edison* on the grounds that the language of the SMP Policy does not expressly limit coverage to occurrences within the policy period.

Second, J&S argues that the SMP Policy is ambiguous and *Con Edison* does not control because the SMP Policy provides coverage for "bodily injury, sickness or disease sustained by any person which occurs during the policy period, *including death at any time resulting therefrom*," (SMP Policy 30 (emphasis added)).  (D's SJ Opp. 14.)  According to J&S, this provision evinces the parties' intent that LMFIC provide continuing coverage beyond the policy period for long-term injuries resulting in death and therefore "undercuts the rationale for pro rata allocation."  (*Id.*)  However, this argument is contrary to the Second Circuit's decision in *Olin Corp. v. American Home Assurance Co.* ("*Olin II*"), 704 F.3d 89 (2d Cir. 2012).  In *Olin II*, the policy at issue contained a continuing coverage provision that stated:  "[I]n the event that personal injury or property damage arising out of an occurrence covered hereunder is continuing at the time of termination of this Policy, Underwriters will continue to protect the Assured for Liability in respect of such personal injury or property damage without payment of additional premium."  *Id.* at 99-100.  The Second Circuit concluded that "New York state court decisions and those prior decisions of this Court endorsing the pro rata approach foreclose us from interpreting [the continuing coverage provision] as imposing joint and several liability."  *Id.* at 102.  Because the continuing coverage provision was silent as to the insurer's liability for injuries occurring before the policy period, the provision's existence was "not enough" to disturb

the usual rule that pro rata allocation applies under a policy requiring the insurer to pay "all sums" arising during the policy period.  *Id.* at 102-103.  In other words, even if a policy provides continuing coverage after the policy period for an injury that arose during the policy period, pro rata allocation remains appropriate under New York law when the nature of the injury makes it impossible to specify the injury's origin.  Accordingly, the fact that the SMP Policy covers death at any time resulting from injury during the policy period does not change the fact that it unambiguously provides for pro rata allocation of liability under New York law.

Third, J&S argues that the existence of non-cumulation of liability (or "anti-stacking") provisions in the Umbrella Excess Liability ("UEL") Policies, including the UEL Policies in effect at the same time as the SMP Policy, would make pro rata allocation unfair and provide Liberty Mutual with a windfall.  (*See* D's SJ Opp. 14-16.)  The anti-stacking clauses in the UEL policies provide:

> If the same occurrence gives rise to personal injury, property damage or advertising injury or damage which occurs partly before and partly within any annual period of this policy, the each occurrence limit and the applicable aggregate limit or limits of this policy shall be reduced by the amount of each payment made by the company with respect to such occurrence, either under a previous policy or policies of which this is a replacement, or under this policy with respect to previous annual periods thereof.

(Goebel Aff. Ex. A, at 4; *id.* Ex. B, at 4; *id.* Ex. C, at 3.)[12]  In other words, the anti-stacking clauses provide that, in the event of progressive injury over the course of multiple policy periods arising from a single occurrence, Liberty Mutual's total coverage obligation would not exceed the applicable coverage limits for a single policy period.  The UEL Policies are not at issue on LMFIC's motion for partial summary judgment, as no coverage was provided under the UEL

---

[12] "Goebel Aff." refers to the Affidavit of Robert B. Goebel in Opposition to Liberty Mutual's Motion for Partial Summary Judgment.  (Doc. 22.)

Policies in the Kestenbaum Action, so it is unclear, and J&S does not explain, how the anti-stacking clauses in the UEL Policies could have any effect on the unambiguous meaning of the SMP Policy.  Furthermore, even if the anti-stacking clauses were relevant here, J&S fails to explain how their enforcement is inconsistent with pro rata apportionment of liability among insurers or is unfair under the circumstances.[13]

For the foregoing reasons, the SMP Policy unambiguously provides for pro rata allocation of liability based upon the insurer's time on the risk under New York law.

**B.**   ***There Are No Genuine Disputes of Material Fact That Preclude Partial Summary Judgment***

J&S further argues that several other purported factual disputes, aside from the construction of the terms of the SMP Policy itself, preclude partial summary judgment in favor of LMFIC.  I disagree.

First, J&S asserts that there is a factual dispute as to whether the missing BOP Policy was in effect at the same time as the SMP Policy and, if so, whether the BOP Policy contained terms that would affect the allocation of liability under the SMP Policy.[14]  (*See* D's SJ Opp. 8-9.)  J&S asserts that "it would be illogical and subvert the purpose of [the] insurance coverage for which it paid substantial premiums to find different methods of allocation applicable under different

---

[13] Where a policy reduces an insurer's coverage obligation for an occurrence by the amount of coverage provided by a *different* insurer for the same occurrence under a so-called "other insurance" provision, pro rata allocation may give the insurer an unfair "'double credit':  the pro rata methodology allocates only a portion of the total loss to each insurer, but enforcing an 'other insurance' provision would then allow insurers to reduce their liability for their portion of the loss to the extent another insurer pays damages for that insurer's portion of the loss."  *Olin II*, 704 F.3d at 104 n.20.  Here, however, the anti-stacking clauses in the UEL Policies reduce Liberty Mutual's coverage obligations for a particular occurrence by "the amount of each payment made *by the company*"—that is, by Liberty Mutual—with respect to the same occurrence under prior policies or prior annual periods of the same policy. (Goebel Aff. Ex. A, at 4.)  There is therefore no "double credit."

[14] J&S also claims that because all of its insurance coverage for the period 1985 through 1991 was placed with Liberty Mutual entities, it intended to "implement an overall singular and seamless economic and efficient risk coverage program."  (D's SJ Opp. 8.)  However, J&S does not point to any evidence in the record concerning its purported intent, or adequately explain why any such intent would impact the interpretation of the SMP Policy.

policies." (*Id.* at 8.)  However, assuming *arguendo* that there is a factual dispute as to whether

the BOP Policy and the SMP Policy were in effect at the same time, that factual dispute is not

material to LMFIC's instant motion for partial summary judgment because the SMP Policy

unambiguously provides:  "The terms of this insurance shall not be waived, changed or modified

except by endorsement issued to form a part of this policy."  (SMP Policy 25.)  No such

endorsement has been put before me.  LMFIC's motion for partial summary judgment pertains

only to the SMP Policy, and the terms of the BOP Policy or any other policy that might have

been in effect at the same time can neither modify the unambiguous terms of the SMP Policy nor

be used as extrinsic evidence in interpreting those unambiguous terms.  Accordingly, the terms

of the BOP Policy are not relevant in determining the parties' rights and obligations under the

SMP Policy.  Even if they were relevant, moreover, J&S cites no legal authority for the

proposition that it would be improper or "illogical" to apply two different methods of allocation

under two different contracts if the terms of those contracts actually provided for different

methods of allocation.

     Second, J&S contends that Liberty Mutual's second reservation of rights letter of October

15, 2012, (Bryce Aff. Ex. 4), is "defective" and therefore invalid because the letter states that it is

from LMIC, rather than from LMFIC, which issued the SMP Policy and was referenced in the

first reservation of rights letter, (*id.* Ex. 3).  Under New York law, an insurer's express

reservation of rights under a policy "preclude[s] arguments both as to waiver and as to equitable

estoppel."  *Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 176 (2d Cir. 2006); *see

also Steadfast Ins. Co. v. Stroock & Stroock & Lavan LLP*, 277 F. Supp. 2d 245, 254 (S.D.N.Y.

2003) ("When an insurer reserves its right to deny coverage, estoppel and waiver may not be

inferred.").  "In the insurance context, New York law defines waiver as a voluntary and

intentional relinquishment of a known right.  Waiver may be found where there is direct or circumstantial proof that the insurer intended to abandon the defense." *New York v. AMRO Realty Corp.*, 936 F.2d 1420, 1431 (2d Cir. 1991) (internal citations and quotation marks omitted).  Waiver of rights under an insurance contract "should not be lightly presumed." *Globecon Grp.*, 434 F.3d at 176.  "A reservation of rights letter must give fair notice to the insured that the insurer intends to assert defenses to coverage or to pursue a declaratory relief action at a later date." *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 948 F. Supp. 263, 268 (S.D.N.Y. 1996).

J&S's argument that Liberty Mutual's second reservation of rights letter is invalid must be rejected.  As an initial matter, J&S does not explain why the first reservation of rights letter in which LMFIC agreed to provide J&S with a defense in the Kestenbaum Action under the SMP Policy is not sufficient with respect to the SMP Policy.  In addition, the October 15, 2012 letter provided fair notice to J&S that the insurer reserved its right to seek contribution from J&S for its pro rata share of any indemnity obligation in the Kestenbaum Action for the period in which J&S was uninsured.  *See id*.  Indeed, J&S does not dispute that the language of the second letter provided fair notice.  Instead J&S argues the letter is invalid because it states it is from LMIC.  Neither the parties nor I have identified case law addressing analogous circumstances in which there is a dispute about the proper identity of the party purporting to reserve its rights.  However, under anything other than the most strained, hyper-technical reading of the October 15 letter, it is clear that LMFIC sought to reserve its rights.  The first and second reservations of rights are both on the letterhead of "Liberty Mutual Insurance"; both identify "Liberty Mutual Insurance Company" in their headings as the underwriting company on the policy at issue; and both are signed by the same claims representative, Roderick Bryce.  (Bryce Aff. Ex. 3, at 1; *id.* Ex. 4, at

18

1.)  The second letter incorporates the first by reference, (*id.* Ex. 4 at 1), and both letters repeatedly use the shorthand "Liberty Mutual Insurance" to refer to the issuer of the SMP Policy. Under any reasonable reading, J&S was on notice on October 15, 2012 that its insurer under the SMP Policy and BOP Policy reserved the right to seek contribution from J&S based upon pro rata allocation of liability under those policies.  J&S does not state why naming LMIC instead of LMFIC in the second letter vitiates this notice.  Nor does J&S point to any contemporaneous evidence that it was confused by the second reservation of rights letter.  The letter surely does not evince LMFIC's intent to *waive or abandon* its right to seek contribution.  *See AMRO*, 936 F.2d at 1431.

Even if there were a dispute about the validity of the second reservation of rights, J&S does not actually advance any legal arguments based upon LMFIC's alleged failure to reserve its rights that would prevent me from granting partial summary judgment in LMFIC's favor.  As explained above, a valid reservation of rights precludes the insured from arguing in subsequent litigation that the insurer waived or is estopped from asserting the rights at issue.  *See Globecon Grp.*, 434 F.3d at 176.  However, J&S does not argue in opposing the instant motion that LMFIC waived its right to seek contribution from J&S or is estopped from pursuing contribution.  Nor does J&S marshal evidence tending to show that LMFIC intended to abandon its right to seek contribution from J&S, or cite or apply case law concerning waiver or estoppel.  J&S merely questions the validity of the second reservation of rights letter, which is not in itself a sufficient reason to deny partial summary judgment in LMFIC's favor.  *Cf. Globecon Grp.*, 434 F.3d at 175-76 (addressing insured's consent, waiver, and estoppel arguments); *Hutton Constr. Co. v. Cnty. of Rockland*, 52 F.3d 1191, 1193 (2d Cir. 1995) (rejecting suretor's waiver and estoppel arguments in light of repeated reservations of rights); *Gelfman v. Capitol Indem. Corp.* 39 F.

Supp. 3d 255, 269 (E.D.N.Y. 2014) ("The [insureds] offer argument—but no evidence—that [the insurer] intended to abandon its late-notice defense.").

Third, J&S argues that it cannot be obligated to contribute any portion of the settlement payment to the Kestenbaums because Liberty Mutual settled the Kestenbaum Action without its consent and therefore Liberty Mutual made the payment voluntarily.  (*See* D's SJ Opp. 10, 17.) The SMP Policy unambiguously provides:  "[T]he company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, and may make such investigation and *settlement of any claim or suit as it deems expedient*."  (SMP Policy 21 (emphasis added).)  It is certainly accurate to say that Liberty Mutual was not coerced or in some other way forced to make a payment to settle the Kestenbaum Action and that it was a voluntary act.  However, it was an act that Liberty Mutual had every right to take.  As a matter of law, a so-called "deems expedient" clause such as this one confers discretion on the insurer to settle an action within the policy limits as it deems appropriate, even if the claim is invalid, and even over the objection of the insured.  *See, e.g.*, *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 836-37 (3d Cir. 1995); *Nat'l Union Fire Ins. Co. v. Jay Tee Equities Co.*, 628 N.Y.S.2d 765, 766 (App. Div. 1995); *see also Orion Ins. Co. v. Gen. Elec. Co.*, 493 N.Y.S.2d 397, 401 (Sup. Ct. 1985) ("Under the terms of this contract [including a 'deems expedient' clause], it is perfectly proper for the insurers to settle an action for a figure where GE's contribution in the form of the deductible is considerably larger than the insurer's contribution. . . .  It would even be proper for the insurers to settle for a figure within the deductible, thus spending GE's money *without its consent* and at no cost to themselves." (emphasis added)), *aff'd sub nom. U.S. Aviation Underwriters, Inc. v. Gen. Elec. Co.*, 509 N.Y.S.2d 778 (App. Div. 1986).  Accordingly,

the fact that J&S may not have wanted to settle the Kestenbaum Action is irrelevant and has no legal significance, as the SMP Policy signed and agreed to by J&S unambiguously gave LMFIC the authority to settle the Kestenbaum Action in its sole discretion.

Finally, J&S argues that there is a factual dispute as to whether and when it was uninsured.  (*See* D's SJ Opp. 17-18.)  Assuming *arguendo* that J&S has introduced sufficient evidence in opposition to LMFIC's motion to create a genuine factual dispute as to whether and when it was uninsured,[15] this dispute is not material because it does not affect LMFIC's entitlement to its requested relief.  It is well established that the insured is obligated to contribute its pro rata share of indemnity for periods in which "it elected to assume [the risk], either by declining to purchase available insurance or by purchasing what turned out to be an insufficient amount of insurance."  *Stonewall Ins. Co.*, 73 F.3d at 1204; *see Fulton Boiler Works, Inc. v. Am. Motorists Ins. Co.*, 828 F. Supp. 2d 481, 490-91 (N.D.N.Y. 2011); *see also Uniroyal, Inc. v. Home Ins. Co.*, 707 F. Supp. 1368, 1392 (E.D.N.Y. 1988) ("Self-insurance is called 'going bare' for a reason.").  Notwithstanding Liberty Mutual's provision of coverage under the SMP Policy and the BOP Policy for asbestos-related injuries in the Kestenbaum Action, insurance for asbestos-related injury was generally not available after 1985.  *See Stonewall Ins. Co.*, 73 F.3d at 1204.  On the instant motion, LMFIC seeks a declaration that:  (1) it "is obligated to pay only its pro rata share of indemnity under the [SMP Policy] issued to [J&S], including in connection with the settlement of [the Kestenbaum Action]"; (2) it "is not obligated to indemnify J&S for uninsured years or the periods insured by other insurance carriers"; and (3) it "is entitled to

---

[15] The insured generally has the burden to establish coverage and may do so with secondary evidence—that is, evidence other than the insurance policy itself—only after a diligent and unsuccessful search for the missing policy. *See Burt Rigid Box, Inc. v. Travelers Prop. Cas. Co.*, 302 F.3d 83, 91-92 (2d Cir. 2002).  Here, J&S provides the averment of its co-owner that "it has been the practice of the company to maintain comprehensive liability insurance," (Diamond Aff. ¶ 7), and a financial statement from 1981 reflecting payment for insurance premiums, (*id.* Ex. A).

equitable contribution from J&S for the amount [it] paid under the SMP Policy in excess of its pro rata share of indemnity with respect to the Kestenbaum [Action]."  (Doc. 18.)  Exactly how long J&S was uninsured has no bearing on whether LMFIC is entitled to this declaration as a matter of law.  J&S is obligated to contribute its pro rata share of indemnity for whatever period before 1985 it did not have insurance, and LMFIC is not obligated to indemnify J&S for any periods insured by other carriers or any periods without insurance prior to 1985.  Any factual dispute about when J&S had other insurance is therefore not material and does not prevent me from granting partial summary judgment in LMFIC's favor.  *See Anderson*, 477 U.S. at 248.  Those issues are for another day.

### C.     *The Modified Requests Seek Irrelevant Material and Are Unduly Burdensome*

As explained above, the SMP Policy and other policies providing coverage for bodily injury occurring "during the policy period" are not ambiguous, and they provide for pro rata allocation of liability based upon the insurer's time on the risk.  *See Roman Catholic Diocese*, 991 N.E.2d at 676.  It would therefore be impermissible to resort to extrinsic evidence to construe the provisions of the SMP Policy.  *See, e.g.*, *Olin I*, 221 F.3d at 318 ("Under New York law, extrinsic or parol evidence may be admitted as to the meaning of the terms of a written contract when the terms are ambiguous.  . . . Even where some ambiguity lurks in the language of the contract, a court may still construe the contract, if it can do so without reference to extrinsic circumstances or evidence." (internal citation and quotation marks omitted)).  It follows that the material sought by J&S's Modified Requests, which J&S claims is "relevant as an aid in interpreting the policy language at issue here," (D's Rule 26 Opp. 9), is not in fact relevant under Rule 26.  Evidence of Liberty Mutual's prior course of dealing and its prior interpretation of the phrase "during the policy period" in other cases will not be admissible to interpret the

unambiguous contractual language at issue in this action.  For this reason, I previously ruled that the Modified Requests sought irrelevant information and sustained Liberty Mutual's objections to those requests.  (*See* Doc. 61.)

However, even if the material sought by the Modified Requests were relevant, I would grant Liberty Mutual's motion for a protective order because the Modified Requests are unduly burdensome.  Liberty Mutual provided an affidavit from a paralegal, Elena Stakhanova, formerly employed by LMIC and presently employed by LMIC's claims processing agent.  Ms. Stakhanova explains that Liberty Mutual keeps its claim files in boxes, and that it can generally identify the location of a file by the insured's name, the claimant's name, the claim number, or the policy number.  (*See* Stakhanova Aff. ¶¶ 5-6.)[16]  Liberty Mutual is not able to identify the location of a claim file based upon whether the claim involves an asbestos-related injury, or based upon what was at issue in resolving the underlying claim.  (*See id.* ¶ 7.)  Liberty Mutual would therefore need to conduct a file-by-file review to determine which claim files contained information potentially responsive to the Modified Requests.  (*See id.* ¶ 8.)  Similarly, for older litigation, Liberty Mutual does not have a preassembled list of asbestos-related litigation or a search tool that would enable it to identify the lawsuits in which the allocation of indemnity was at issue, (*see id.* ¶ 9), and it would need to review litigation files individually to identify responsive materials, (*see id.* ¶ 10).  Ms. Stakhanova estimates that Liberty Mutual would need to search 20,475 boxes of litigation files and 30,956 boxes of claim files, each containing an average of 625 documents that would be reviewed at an average of 2.5 minutes per document, for a total of well over one million hours of review.  (*See id.* ¶¶ 11, 13.)

Liberty Mutual's litigation files are computerized for cases commenced in 1994 or later.

---

[16] "Stakhanova Aff." refers to the Affidavit of Elena Stakhanova.  (Doc. 48.)

(O'Brien Aff. ¶ 7.)[17]  With respect to those more recent litigation files, LMIC's manager of legal systems avers that Liberty Mutual would be able to identify which files are asbestos-related, but a manual review of approximately 2,775 electronic files would still be required to determine whether pro rata allocation of indemnity was at issue in each case.  (*Id.* ¶¶ 9-11.)  This review would take approximately 694 to 925 hours.[18]  (*Id.* ¶ 13.)

In light of the relatively limited value of this case and the sheer volume of work and expense that would be required to identify responsive material, I conclude that the Modified Requests are unduly burdensome even if they seek relevant information.  *See, e.g.*, *Gucci Am., Inc. v. Guess?, Inc.*, 790 F. Supp. 2d 136, 141 (S.D.N.Y. 2011) (finding undue burden where party would need to "manually compile lists of potentially hundreds or thousands of product styles, and then conduct lengthy financial analyses to determine the necessary sales and costs information"); *Chen-Oster*, 285 F.R.D. at 303-06 (finding no undue burden where production would require several hundred hours of work in major employment class action with "high" financial stakes on behalf of all female financial-services employees at the associate level or higher at Goldman Sachs).[19]

---

[17] "O'Brien Aff." refers to the Affidavit of Glenn O'Brien.  (Doc. 49.)

[18] J&S offers various objections to the adequacy of the burden affidavits, none supported by case law.  (*See* D's Rule 26 Opp. 15-18.)  Taken as a whole, and regardless of any minor quibbles, the affidavits adequately establish that Liberty Mutual would need to individually review tens of thousands of individual files over at least several hundreds of thousands of hours to produce all documents responsive to J&S's Modified Requests.

[19] The concept of proportionality underlying Rule 26(b), *see Chen-Oster*, 285 F.R.D. at 303, is explicitly incorporated into the new version of the Rule that will become effective on December 1, 2015.  The amended Rule 26(b)(1) will provide that material is discoverable if it is "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Order of April 29, 2015, Supreme Court of the United States, *available at* http://www.supremecourt.gov/orders/courtorders/frcv15_5h25.pdf.  My ruling that the material sought by the Modified Requests would be unduly burdensome to produce is consistent with the amended version of Rule 26(b), under which this material would not be discoverable because it is disproportionate to the needs of the case in light of the amount in controversy, the importance of the proposed discovery, and the burden of the proposed discovery.

Contrary to J&S's argument, (*see* D's Rule 26 Opp. 11-13), Liberty Mutual is not foreclosed from arguing that the Modified Requests impose an undue burden on the basis that any burden arises from Liberty Mutual's inadequate filing system.  In general, "the burden that results from disorganized record-keeping does not excuse a party from producing relevant documents."  *Brooks v. Macy's, Inc.*, No. 10-CV-5034, 2011 WL 1793345, at *4 (S.D.N.Y. May 6, 2011).  In particular, "[a] sophisticated []insurer that operates a multimillion dollar business is entitled to little sympathy for utilizing an opaque data storage system, particularly when, by the nature of its business, it can reasonably anticipate frequent litigation."  *Zurich Am. Ins. Co. v. Ace Am. Reins. Co.*, No. 05-CV-9170, 2006 WL 3771090, at *2 (S.D.N.Y. Dec. 22, 2006).  Although the need to manually search certain claim files and litigation files can be explained because of their age, as a general matter, it is somewhat perplexing that Liberty Mutual cannot identify with greater precision which of its claim files and litigation files relate to asbestos-related injuries, (*cf.* Stakhanova Aff. ¶ 7), given the cost and importance of asbestos-related litigation and the repeated involvement of certain insureds in such litigation.  It is not surprising, however, that Liberty Mutual is not equipped to determine without manual review of its files whether "allocation, i.e., all sums or pro rata allocation, was at issue," (Ps' Rule 26 Mem. 4), in resolving a particular claim.  Whether there was a dispute over the appropriate method of allocation in a given case is an inherently fact-specific and somewhat complicated question.  In light of the particular material sought by the Modified Requests, I cannot conclude that the burden to Liberty Mutual is the result of any deficiency in its filing system rather than the nature of the requests and the sheer volume of documents that would need to be reviewed in order to locate and produce responsive documents.

V.      **Conclusion**

For the foregoing reasons, LMFIC's motion for partial summary judgment, (Doc. 18), is

GRANTED.  Liberty Mutual's motion to sustain its discovery objections and/or for a protective

order, (Doc. 47), was previously granted, and the reasoning for that ruling is explained above.

The Clerk of Court is respectfully directed to terminate the pending motion at Doc. 18.

By July 2, 2015, the parties should file a joint status letter advising:  (1) how, if at all, the

rulings in this Memorandum and Order affect the proposed amended answer and counterclaims

of J&S; (2) how much more time, if any, will be required to complete discovery in this action;

and (3) whether the parties would like to be referred to mediation or to a magistrate judge for

settlement at this time.

SO ORDERED.

Dated: June 29, 2015
        New York, New York

Vernon S. Broderick
United States District Judge